DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Plaintiff-Appellants David Bastian, Nancy Bastian, and their minor child J.B. (collectively "the Bastians") appeal from the judgment of the Lorain County Court of Common Pleas, granting summary judgment in favor of Defendant-Appellees Michael McGannon, his minor child M.M., James Lusk, Monique Lusk, and their minor child C.L. (collectively "the Defendants"). We reverse in part and affirm in part.
 I *Page 2 {¶ 2} On April 3, 2003, J.B. suffered a permanent injury to his right eye when another child shot a Red Ryder B.B. gun ("BB gun"), and the shot struck J.B.'s eye. Prior to J.B. being shot, J.B. and M.M. were playing with the BB gun in M.M.'s backyard. The two took turns shooting at each other with the BB gun, one person firing and the other running. Although M.M.'s father was at home during these events, he did not intervene and stop the boys.
 {¶ 3} Sometime after the boys started their shooting game, C.L. and several other neighborhood girls walked into M.M.'s backyard to look for a neighbor's cat. J.B. accidentally shot one of the girls while she was looking, hitting her just below the hairline. Subsequently, J.B., M.M., and C.L. climbed onto the elevated deck surrounding M.M.'s swimming pool. While the children were on the deck, J.B. sustained the injury to his right eye.
 {¶ 4} On April 5, 2004, the Bastians filed suit against the Defendants. After the Defendants answered, however, the Bastians voluntarily dismissed their lawsuit on April 27, 2005. On April 21, 2006, the Bastians re-filed their suit against the Defendants alleging: (1) negligence on the part of C.L. and M.M.; (2) intentional, willful, and wanton conduct on the part of C.L. and M.M.; (3) negligent supervision on the part of Michael McGannon and James and Monique Lusk; (4) negligent storage of firearms on the part of Michael McGannon; and (5) statutory violations on the part of Michael McGannon and James and Monique Lusk. *Page 3 
 {¶ 5} The Defendants filed their separate motions for summary judgment on February 28, 2007. When the Bastians failed to oppose the motions, the trial court entered judgment in the Defendants' favor. However, the Bastians filed a motion to vacate the trial court's judgment on April 25, 2007. The trial court granted the Bastians' motion and afforded them time to file a brief in opposition.
 {¶ 6} On June 4, 2007, the Bastians filed their brief in opposition to summary judgment along with an affidavit from J.B. On June 27, 2007, the trial court granted summary judgment in favor of the Defendants on all counts. The Bastians have now appealed from the trial court's judgment, raising three assignments of error for our review.
 II Assignment of Error Number One "THE TRIAL COURT ERRED WHEN IT FOUND THERE WERE NO GENUINE ISSUES OF MATERIAL FACT AS TO WHETHER [J.B.] WAS INVOLVED IN A RECREATIONAL ACTIVITY AT THE TIME OF THE INJURY[.]"
 {¶ 7} In the Bastians' first assignment of error, they argue that the trial court erred in granting summary judgment in the Defendants' favor on the basis that J.B. was engaged in a recreational activity at the time of his injury and was harmed by one of the activity's participants. We agree.
 {¶ 8} This Court reviews an award of summary judgment de novo.Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. We apply the same standard as the trial court, viewing the facts of the case in the light most favorable *Page 4 
to the non-moving party and resolving any doubt in favor of the non-moving party. Viock v. Stowe-Woodward Co. (1983), 13 Ohio App.3d 7,12.
 {¶ 9} Pursuant to Civ.R. 56(C), summary judgment is proper if:
 "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
 {¶ 10} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280, 292-93. Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). Id. Once this burden is satisfied, the non-moving party bears the burden of offering specific facts to show a genuine issue for trial. Id. at 293. The nonmoving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. Henkle v.Henkle (1991), 75 Ohio App.3d 732, 735.
 {¶ 11} "Where individuals engage in recreational or sports activities, they assume the ordinary risks of the activity and cannot recover for any injury unless it can be shown that the other participant's actions were either reckless or *Page 5 
intentional[.]" (Internal quotations omitted.) Marchetti v. Kalish
(1990), 53 Ohio St.3d 95, syllabus. If successfully proven, the doctrine of primary assumption of risk prevents a plaintiff from setting forth a prima facie case of negligence. Aber v. Zurz, 9th Dist. No. 23876,2008-Ohio-778, at ¶ 9. "Primary assumption of the risk relieves a recreation provider from any duty to eliminate the risks that are inherent in the activity * * * because such risks cannot be eliminated."Lykins v. Fun Spot Trampolines, 12th Dist. No. CA2006-05-018,2007-Ohio-1800, at ¶ 34, quoting Whisman v. Gator Invest. Properties,Inc. (2002), 149 Ohio App.3d 225, 236. The determining factor in such cases is the conduct of the defendant, "not the participant's or spectator's ability or inability to appreciate the inherent dangers of the activity." Gentry v. Craycraft, 101 Ohio St.3d 141, 2004-Ohio-379, at ¶ 9. Furthermore, "the reckless/intentional standard of liability applies regardless of whether the activity was engaged in by children or adults, or was unorganized, supervised, or unsupervised." Id. at ¶ 8.
 {¶ 12} In determining whether the primary assumption of the risk doctrine bars an injured party's recovery, a court essentially engages in a three part analysis. See, e.g., Gentry at ¶ 14; see, also,Thompson v. McNeill (1990), 53 Ohio St.3d 102, 104 (explaining that the primary assumption of the risk doctrine does not apply to a victim who did not agree to participate in or watch an activity). First, the court must determine whether the plaintiff was a participant or spectator in a recreational activity. See Gentry at ¶ 7-14. If the plaintiff was either a *Page 6 
participant or spectator, the court then must determine whether the defendant was a participant in the recreational activity. See id. Finally, if the defendant was also a participant, then the court must look to his conduct and determine whether he acted recklessly or intentionally under the particular facts of the case. SeeThompson, 53 Ohio St.3d at 104 (explaining that intentional or reckless misconduct must be understood in the context of the rules of the sport).
 {¶ 13} In cases involving children, the Ohio Supreme Court has cautioned that the subjective understanding of the plaintiff must not control a court's three part analysis. Gentry at ¶ 9. That is, a court must not delve into the scope of the child's consent to an activity based on what the child understood the rules of the recreational activity to be. Id. (explaining that a defendant's liability is not a function of a child plaintiff's understanding of the rules and risks involved in an activity). Once the court determines that the children were engaging in a recreational activity, the court's focus must shift to the alleged reckless or intentional nature of the defendant's conduct. See Thompson, 53 Ohio St.3d at 104.
 {¶ 14} As previously noted, an activity may qualify as a "recreational activity" regardless of whether the participants are adults or children or whether the activity is supervised or unsupervised. Gentry at ¶ 8. A number of activities have qualified as "recreational activities." See id. (performing recreational activity analysis where minor child hit another in the eye with a nail while *Page 7 
hammering the nail into a chair); Marchetti, supra (performing recreational activity analysis where children were playing modified game of "kick the can"); Schuster v. Gereke (Oct. 1, 1997), 9th Dist. No. 96CA006625 (performing recreational activity analysis where one minor child struck another in the eye with a BB gun during a "war" game). The determination that an activity is a "recreational activity" does not depend upon the existence of well-defined or verbalized rules.[1] SeeGentry at ¶ 7 (finding that two children were engaged in a recreational activity where one hammered nails into a chair and the other watched). The existence of rules clearly helps a court to determine whether or not an activity constitutes a "recreational activity," but their absence is not fatal. Indeed, the Ohio Supreme Court has stated that "typical backyard play * * * falls within the definition of recreational activity."Gentry at ¶ 7.
 {¶ 15} The trial court granted judgment in favor of the Defendants because he found that: (1) the children were engaged in a recreational activity that consisted of shooting each other with the BB gun; (2) J.B., M.M., and C.L. were willing participants in the activity; and (3) the primary assumption of the risk doctrine barred J.B.'s recovery because he assumed the risk of being struck by one *Page 8 
of the BB's while engaging in the activity. Although the children could not agree on whether M.M. or C.L. actually shot J.B., the trial court found that no genuine issues of material fact existed because all three children were participants in the activity and neither M.M. nor C.L. engaged in reckless or intentional behavior. We cannot agree with the trial court's analysis.
 {¶ 16} Our review of the record leads us to conclude that genuine issues of material fact exist. First, there is a genuine issue as to whether the children were involved in a recreational activity at the time of J.B.'s injury. While J.B. and M.M.'s BB gun game likely constituted a recreational activity, J.B.'s affidavit indicates that J.B. and M.M. ended the game prior to J.B. getting shot. If the activity truly ended prior to J.B.'s injury, then he was not a participant in a recreational activity at the time of his injury. See Gentry at ¶ 7-14 (explaining that before primary assumption of the risk applies, the court must determine that the victim was a participant or spectator in a recreational activity). Second, even assuming arguendo that J.B. was a willing participant in a recreational activity, the children disagreed as to the activity's other participants. In her deposition, C.L. denied having the BB gun at all, let alone shooting J.B. with it. In his affidavit, J.B. stated that C.L. was not a part of the game that he and M.M. were playing. While the victim of a recreational activity may be either a participant or a spectator, the alleged wrongdoer must be a participant in the activity. See Thompson, 53 Ohio St.3d at 104
(explaining that the primary assumption of the *Page 9 
risk doctrine is a function of risk foreseeability). Therefore, if C.L. was not a participant in the game and she shot J.B., then the primary assumption of the risk doctrine would not bar J.B.'s claim.
 {¶ 17} Related to this last point, there is also a genuine issue of material fact as to who shot J.B. Several of the children indicated that C.L. shot J.B., but C.L. denied doing so. C.L. stated that M.M. shot J.B., and J.B. admitted in his deposition that he did not know whether M.M. or C.L. shot him. Once again, the determination of which child shot J.B. and whether that child was a participant in an ongoing, recreational activity is critical to J.B.'s negligence claim. The facts in the record could potentially support at least three different conclusions: (1) that J.B. was injured by another participant during a recreational activity and that he assumed the risk of such harm; (2) that J.B. was injured by a non-participant in a recreational activity; or (3) that J.B. was injured after the recreational activity ended. Either of the latter two possibilities would foreclose the defense of primary assumption of the risk, which the court relied upon in granting the Defendants' motion. Because genuine issues of material fact exist, the trial court erred in granting summary judgment in favor of the Defendants on the Bastians' negligence claim. The Bastians' first assignment of error has merit.
 Assignment of Error Number Two "THE TRIAL COURT ERRED WHEN IT FOUND THERE WERE NO GENUINE ISSUES OF MATERIAL FACT AS TO WHETHER MICHAEL MCGANNON WAS LIABLE FOR NEGLIGENT SUPERVISION." *Page 10 
 {¶ 18} In their second assignment of error, the Bastians argue that the trial court erred in granting summary judgment to Michael McGannon on their negligent supervision claim. Specifically, they argue that Michael McGannon's deposition testimony raises a genuine issue of material fact as to whether McGannon negligently supervised the children while they were in his backyard and as to whether he negligently entrusted the BB gun to J.B.
 {¶ 19} An appellant bears the burden of demonstrating error on appeal. See App.R. 16(A)(7); Loc.R. 7(B)(7). App.R. 16(A)(7) provides that an appellant's brief shall include "[a]n argument containing the contentions of the appellant with respect to each assignment of error * * * and the reasons in support * * * with citations to * * * parts of the record on which appellant relies." "It is the duty of the appellant, not this court, to demonstrate his assigned error through an argument that is supported by citations to legal authority and facts in the record." State v. Taylor (Feb. 9, 1999), 9th Dist. No. 2783-M. See, also, App.R. 16(A)(7).
 {¶ 20} In support of their assignment of error, the Bastians rely solely on the statements that Michael McGannon made in his deposition. However, McGannon's deposition is not a part of the record. Even at the trial level, the only depositions filed were those of Michael Mendak, Jr., C.L., Brooke Baldwin, and J.B. Thus, even if the appellate record contained McGannon's deposition, we would not be able to consider it because it was not a part of the trial court's record. See generally App.R. 9. Since the Bastians' claim of negligent supervision *Page 11 
depends upon facts that are outside of the record, the Bastians cannot meet their burden on appeal with regard to this claim. Furthermore, the record that is before this Court does not contain any facts that would support a finding that McGannon knew of any alleged reckless or negligent tendencies that M.M. might have had. See Hau v. Gill (July 14, 1999), 9th Dist. No. 98CA007061, at *2 (listing the elements of negligent supervision, including that the parent must have known about the child's reckless or negligent tendencies). The Bastians' second assignment of error is overruled.
 Assignment of Error Number Three "THE TRIAL COURT ERRED WHEN IT FOUND THAT THERE WERE NO GENUINE ISSUES OF MATERIAL FACT AS TO WHETHER MICHAEL MCGANNON WAS LIABLE FOR NEGLIGENT STORAGE OF FIREARMS."
 {¶ 21} In their third assignment of error, the Bastians argue that the trial court erred in granting summary judgment to Michael McGannon on their negligent storage of firearms claim. Specifically, the Bastians argue that McGannon provided M.M. with access to the BB gun and that a BB gun is a firearm pursuant to R.C. 2923.21(A)(3) (prohibiting a person from improperly furnishing a firearm to a minor).
 {¶ 22} Once again, the Bastians rely on evidence outside of the record to support their claim that McGannon negligently stored the BB gun. The Bastians rely on Michael McGannon and M.M.'s depositions to argue that McGannon left the BB gun in a place that M.M. could access. Yet, the Bastians did not file either *Page 12 
of these depositions in the trial court or in this Court on appeal. We once again note that we cannot consider evidence which is outside of the trial court record. Moreover, we have no practical means of considering evidence which has not been included in the appellate record. Because they rely solely on evidence outside the record to support their argument, the Bastians have not met their burden on appeal. See App.R. 16(A)(7); Loc.R. 7(B)(7). The Bastians' third assignment of error lacks merit.[2]
 III {¶ 23} The Bastians' first assignment of error is sustained. The Bastians' second and third assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is reversed in part, affirmed in part, and the cause is remanded for further proceedings consistent with this opinion.
Judgment affirmed in part, reversed in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into *Page 13 
execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to the parties equally.
MOORE, P. J. DICKINSON, J. CONCUR
[1] However, the existence of rules as well as "the nature of the sport involved, the * * * regulations which govern the sport, the customs and practices which are generally accepted and which have evolved with the development of the sport" are items that a court should consider when determining whether a defendant's conduct was reckless or intentional. Thompson, 53 Ohio St.3d at 105, quoting Hanson v.Kynast (1987), 38 Ohio App.3d 58, 64 (Milligan, P.J., concurring).
[2] We note that the McGannon's third assignment of error raises a novel issue of law for this Court. Namely, whether a BB gun constitutes a firearm pursuant to R.C. 2923.21(A)(3). Because we dispose of McGannon's assignment of error on other grounds, however, we reserve judgment on this issue. *Page 1